IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § | |
| VS. | § § § § § § | CRIMINAL ACTION NO. H-11-165-3<br>CIVIL ACTION NO. H-15-1083 |
| DIN REGINA CHANEY | § | |

**MEMORANDUM AND OPINION**

Din Regina Chaney filed this motion under 28 U.S.C. § 2255 to vacate her conviction and sentence. Chaney was indicted with others for conspiring to commit mail fraud, wire fraud, and bank fraud from January 2005 through April 2009, in violation of 18 U.S.C. §§ 1341, 1343, 1344 and 1349, and for conspiring to commit money laundering, in violation of 18 U.S. C. §§ 1956(h). The indictment arose from a mortgage-loan fraud scheme. In June 2011, Chaney pleaded guilty under a written Rule 11(c)(1)(B) plea agreement in which she waived her rights to appeal and to collaterally attack her sentence in a postconviction motion. In July 2014, the court sentenced Chaney to a 36-month prison sentence followed by 5 years of supervised release, and imposed restitution in the amount of $4,551,917.65. Chaney did not appeal.

The motion to vacate is based on Chaney's allegations that her counsel's failure to appeal was ineffective assistance. She also alleges that defense counsel failed to challenge the loss restitution amounts attributed to her. Finally, Chaney challenges her conviction on the ground that her plea was involuntary because she did not understand the nature of the charge and the consequences of the plea. The government moves to dismiss all Chaney's claims. (Docket Entry No. 516).

## I. The Standard of Review

Once an appeal of a conviction is exhausted or, if the right to appeal was waived, courts are "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164, 102 S. Ct. 1584, 1594 (1982) ("[A] collateral challenge may not do service for an appeal."); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991)). Motions to vacate sentences "may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citations omitted).

> A claim of ineffective assistance of counsel has two components:
>
> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Strickland v. Washington*, 426 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). The movant has the burden of proof. To show deficient performance, the movant must overcome a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065-66. Showing prejudice requires "a reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 2068. The Supreme Court recently explained the prejudice prong:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible

> a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." The likelihood of a different result must be substantial, not just conceivable.

*Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 791 92 (2011) (internal citations omitted).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F. 3d 202, 210 (5th Cir. 1994), *cert. denied*, 514 U.S. 1071 (1995) (" A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

Chaney is pro se. Her pleadings are reviewed under a less stringent standard than pleadings drafted by attorneys and are entitled to a liberal construction, *see Haines v. Kerner*, 404 U.S. 519 (1972), but she must allege sufficient facts to support her claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (emphasis added).

## II.     The Plea and Sentence

The plea agreement Chaney signed in open court, under oath, after an extended Rule 11 colloquy, contained the following detailed factual basis:

> 17.     Defendant is pleading guilty because she is guilty of the charges contained in Counts One and Two of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. The following facts, among others would be offered to establish the defendant's guilt:
>
> > The defendant, Din Regina Chaney, a.k.a Din Ironkwe (hereinafter CHANEY), participated in the mortgage fraud scheme alleged in Count One of the indictment as a loan officer, as well as borrower. She worked in the lending industry as a loan officer in associated with the mortgage broker at Stephens Development Inc (also known as SDI Mortgage) and Gordon Financial Group. CHANEY utilized her position as a loan officer as well as her contacts within the lending industry to obtain mortgage loans by fraud.

Residential mortgage loans were applied for using material false information and misrepresentations regarding the borrower's creditworthiness. The deceptions regarding borrower creditworthiness included but were not limited to employment, income, cash on deposit, and indebtedness. The debt to income ratio was manipulated to make the borrower's loan application fit within the lending guidelines of the lender. CHANEY knew of the false nature of the information provided in the loan submissions and knew and had reason to believe would be material to the Lenders' decisions to fund the mortgage loans.

Individuals with good credit were recruited to act as borrowers in these transactions. The borrowers were recruited as real estate investors whose only investment in the transaction would be their good credit. Frequently, the loans were submitted with the false representation that the purchase was for the borrower's primary residence so that 100% financing could be obtained. Funds needed to close the transaction, including earnest money and buyer closing costs, were paid by one of the conspirators in a fashion which made it appear that the source of the funds was the borrower. The borrowers were paid with proceeds from the fraud for their participation in the acquisition of the property.

The fraudulent loan applications and supporting documents were furnished to the lenders by the United States mail or interstate commercial carrier (hereinafter mail) and through electronic transfers such as E-mail and facsimiles. The false information and misrepresentations were material to the lenders' decision to fund the residential loans and under what conditions they would fund the loans. Loan transaction documents were also electronically transferred or mailed to the lenders by the title companies. To fund the loans, lenders would wire transfer the loan funds to the title company's escrow. Fed Wire has confirmed that these wire transfers crossed state lines at least once when the wire moved through the Federal Reserve Bank in New York, was settled through Fed Wire in New Jersey, and then sent to the escrow accounts of the title companies in Texas. Some of the fraudulently obtained mortgage loans were obtained by the conspirators from lending institutions which were insured by the Federal Deposit Insurance Corporation (FDIC) including Bank of Oklahoma, JP Morgan Chase Bank, Wells Fargo Bank, Patriot Bank, IndyMac Bank and Flagstar Bank. The majority of the loans obtained during the fraudulent scheme fell into default and the properties were foreclosed.

CHANEY established and used the assumed name entity Panacea Properties in the execution of the scheme. She also established bank accounts under the name of Panacea Properties. CHANEY's co-conspirators also established assumed name business entities with corresponding bank accounts which were used during the execution of the scheme including J&C Management Investments, CC San Enterprises, Webber and Associates, Camden Enterprises, Wentworth Management, and Chulo Construction.

The fraudulent property transactions were structured so that loan proceeds could be extracted for the benefit of the conspirators and ultimately deposited into one or more of the assumed name bank accounts. These fraudulently obtained funds were used to fund future fraudulent property transactions, including earnest money payments and/or closing costs, as well as pay outs to conspirators. When a conspirator paid a borrower's closing cost or earnest money, lenders were led to believe the source of those funds was the borrower. The payment of these expenses by a borrower is a factor considered by lenders in evaluating the incentive of borrowers to repay loans.

CHANEY was a loan officer at Gordon Financial Group when she assisted co-conspirator Nathaniel Gordon, III in the purchase of 1511 W. 15th Street, Houston, TX for $289,000. The loan application signed by both CHANEY and Gordon and submitted to the lender misrepresented Gordon's assets/income and liabilities and misrepresented that this residence was to be Gordon's primary residence. In support of that loan application false tax returns were submitted to the lender which inflated Gordon's income in 2005 and 2006. Bank statements from Morgan Stanley were supplied to the lender for account: XXXX943001 in support of the loan application. Those statements were falsified to reflect the account was held in Gordon's name and that he had a balance in excess of $10,000 in this account. Investigative agents obtained copies of account XXXX943001, for the same period reflected in the statements provided to the lender, directly from Morgan Stanley and learned that account number was assigned to a person other Nathaniel Gordon.

At the time this property was purchased by Gordon in August 2007, three other properties were previously purchased in his name. Each of those properties Gordon claimed to be purchasing as his primary residence when he obtained the financing for those purchases in December 2005 and July and August 2006. To offset this indebtedness and to explain how this fourth property on 15th Street was to be Gordon's primary residence, lease agreements for these three properties were provided to the lender which were fabricated.

IndyMac Bank, a federally insured financial institution, ultimately funded this loan by way of a wire transfer from California to the Texas title company. Funds were extracted from this transaction to an assumed name bank account established by Gordon, Webber and Associates.

Six months after this property was purchased by Gordon, he sold it for $435,000 to a straw borrower, Artist Johnson, recruited by co-conspirator Dennis Hannah. The lender for this subsequent purchase was JP Morgan Chase, an FDIC insured institution. Co-conspirator Catherine Sanoubane was employed by JP Morgan Chase as a loan officer and originated this loan in the name of Artist Johnson. Johnson's loan application and supporting documentation contained material misrepresentations regarding his creditworthiness.

      Mortgage insurance was canceled by the carrier after fraud was discovered concerning Johnson's assets and income. It was determined that the pay documents were falsified in order to obtain the loan and that Johnson did not pay the $21,155.92 at closing as represented. CHANEY purchased the cashier's check payable to the title company in the amount of $21,155.92 and listed Artist Johnson as the remitter of those funds. The funds to purchase the check were taken by CHANEY from her Panacea Properties bank account at Wells Fargo.

      Johnson contacted Chase attempting a workout of this loan that had fallen into default. Information was collected from Johnson which directly contradicted the information in his loan application. Johnson did not occupy 1511 W. 15th as his primary residence. His actual income was significantly less than reported. The 2006 tax returns submitted to Chase during the loan processing stated Johnson's adjusted gross income was $256,816. The 2006 tax return Chase later obtained from Johnson showed adjusted gross income of $72,201. Johnson was attempting to sell 1511 W. 15th while attempting to negotiate a workout with Chase. Although he borrowed $413,250 in February 2008 to purchase the property, Johnson claimed the most he could sell the property for in February 2009 was $205,000. Ultimately JP Morgan Chase foreclosed and took a loss on this transaction.

      Gordon received $127,671.05 in seller proceeds from the title company after this transaction closed. He paid CHANEY, Sanoubane and Hannah for their participation in this fraudulent transaction. He also reimbursed Panacea Properties the money used to pay Johnson's closing costs.

      On numerous occasions during the scheme, conspirators took funds obtained by wire fraud and used a portion of those funds to pay closing costs or earnest money on a subsequent fraudulent transaction. The true source of the funds was concealed and hidden from the lender and it was made to appear the funds were coming from the borrower. CHANEY obtained loans on lines of credit she established at a financial institution based on false and fraudulent information. The bank in California wire transferred those loan funds to her bank account in Texas. CHANEY used those fraudulently obtained funds to pay the closing costs on properties acquired during the mortgage fraud scheme. The lenders were led to believe the source of these funds were the borrowers.

(Docket Entry No. 81, pp. 10-17).

### A.    The Rearraignment

The Rule 11(c)(1)(B) plea agreement provided that Chaney would plead guilty to the two counts against her in the superseding indictment. The government agreed not to oppose a three-level

downward adjustment for timely acceptance of responsibility. The government also agreed that if Chaney provided assistance that the government found substantial, the government would file a § 5K1.1 motion at sentencing asking for a below-Guideline sentence. (Docket Entry No. 81, ¶13).

Chaney waived her right to appeal or to file a collateral challenge to her conviction or sentence. The waiver provision in the plea agreement states:

> 9. Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only a sentence imposed above the statutory maximum. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest her conviction or sentence by means of any post-conviction proceeding.

*Id.*, ¶9. The plea agreement also stated:

> 12. The defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement. If the defendant instructs her attorney to file a notice of appeal at the time sentence is imposed or at any time thereafter, the United States will seek specific performance of these provisions.

(*Id.*, ¶12). Chaney signed under the following paragraph:

PLEA AGREEMENT - ADDENDUM

> I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

(*Id.*, p. 20).

On June 29, 2011, Chaney appeared with counsel for rearraignment before United States Magistrate Judge Milloy and pleaded guilty under the written Rule 11(c)(1)B) plea agreement. Judge

Milloy determined that Chaney was competent to plead guilty and "fully understood the admonishments under Rule 11 of the Federal Rules of Criminal Procedure." (Docket Entry No. 82). After the government summarized the written plea agreement, the judge explained that the district court would consult the Sentencing Guidelines in determining Chaney's sentence and outlined the range of the possible prison term, the fine and restitution amounts, supervised release, and the statutory fee assessment.

At the rearraignment, Chaney was placed under oath. She acknowledged that she had had "enough time to talk to [her counsel] about [her] case so that [she felt] comfortable in going forward this afternoon. (*Id.*, p.6). After the prosecutor stated the charges against her, Chaney confirmed that those charges were the ones she had discussed with her attorney, that she was satisfied with the advice he had given her and with the assistance he had given her throughout. (*Id.*, p. 8). The judge expressly admonished Chaney as follows:

> THE COURT: All right. I need you to understand that you have the right to continue in your plea of not guilty. If you did proceed with or persist in a plea of not guilty, you would be entitled to have a trial in this matter. At that trial, the Government would be held to their obligation to prove the case beyond a reasonable doubt. Do you understand that?

(*Id.*, p. 10-11). Chaney confirmed that she understood. She continued to confirm, under oath, that she understood all the judge's admonishments, including that Chaney was "agreeing to waive [her] right to any collateral attack on the conviction or the sentence if [she] is found guilty in this case." (*Id.*). Chaney understood that she "couldn't come back later and complain about either the conviction or the sentence that [she received] because of [her] agreement not to do so." (*Id.* p. 14). After the government recited the terms of the plea agreement, Chaney confirmed that that was the agreement she had reached in exchange for her guilty plea. (*Id.* p. 15). After acknowledging that

she understood all the additional admonishments, Chaney stated that she had no questions about anything the court had said. (*Id.*, p. 20).

The government then recited the lengthy factual basis, and had the following colloquy with Chaney:

> THE COURT: Ms. Chaney, after having been reminded of what the accusations are, being reminded of the range of punishment that is applicable to either of these charges, having been admonished about the consequences of a plea of guilty, and having heard what the Government would prove at trial in this matter, how do you plead to Count 1 and 2 of this Indictment?
>
> DEFENDANT CHANEY: Guilty, Your Honor.
>
> THE COURT: So is it your statement here under oath that everything they've said about you is true in Indictment?
>
> DEFENDANT CHANEY: Yes.
>
> THE COURT: And do I understand that you have talked with Mr. Alston at some length before you came here to Court and before you made that agreement with Ms. Annis in regard to pleading guilty to this charge; is that correct?
>
> DEFENDANT CHANEY: Yes, Your Honor.
>
> THE COURT: Did anyone threaten you in any way so that you would enter a plea of guilty here this afternoon?
>
> DEFENDANT CHANEY: No.
>
> THE COURT: Were you promised anything other than the contents of the Plea Agreement in order to get you to plead guilty here this afternoon?
>
> DEFENDANT CHANEY: No, Your Honor.
>
> THE COURT: And, again, I just to remind you that even though the Government has said here in Court that they will recommend a lower sentence if you cooperate, that's all in their hands, and you understand that you are pleading here this afternoon without any guarantee that, that in fact will happen; is that clear?
>
> DEFENDANT CHANEY: Yes, Your Honor.

> THE COURT: Mr. Alston, do you have any questions you wish to put to Ms. Chaney or Ms. Chaney do you have any questions you wish to put to Mr. Alston before we proceed?
>
> DEFENDANT CHANEY: No, Your Honor.
>
> MR. ALSTON: No, Your Honor.
>
> THE COURT: Are you ready to sign the Plea Agreement at this time?
>
> DEFENDANT CHANEY: Yes.

(*Id.*, p. 28-29). Chaney swore that the matters and pleas contained in the plea agreement were true and correct to the best of her knowledge and that she was signing the plea agreement of her own free will. Judge Milloy then stated the findings and recommendations that she would make to the district court:

> That you are clearly mentally competent and capable of entering an informed plea of guilty.
>
> I find that the pleas are supported by the independent facts as detailed by Ms. Annis this afternoon and in that written Plea Agreement and that each of those establish the elements of the offense.
>
> I find that your pleas to Count 1 and 2 of the Indictment are made voluntarily, freely, and knowingly, and that each - - and that you understand the nature of the proceedings and the consequences of your guilty plea.
>
> I am going to recommend that she accept the guilty pleas and find you guilty as to Count 1 and 2 of the charges in the Indictment that relate to you.

*Id.* p. 31.

> Judge Milloy found that:
>
> 1. the defendant, with the advice of her attorney, has consented orally and in writing to enter her guilty plea before the magistrate judge, subject to final approval and sentencing by the district judge;
>
> 2. the defendant fully understands the nature of the charges and penalties;

    3.    the defendant understands her constitutional and statutory rights and wishes to waive these rights;

    4.    the defendant's plea is made freely and voluntarily;

    5.    the defendant is competent to enter her plea of guilty; and

    6.    there is an adequate factual basis for her plea.

*Id.* p. 2. This court adopted the Report and Recommendation and found Chaney guilty on both counts, (Docket Entry Nos. 82, 94).

### B. The Sentence

The PSR summarized the offense conduct describing the scheme to defraud residential mortgage lenders in great detail. (*See* PSR ¶7 - 70). Chaney's role and relevant conduct were described as follows:

> 11. Din Regina Chaney (a.k.a Din Ironkwe) worked in the lending industry as a loan officer and loan processor for mortgage brokers including Stephens Development Inc., and Gordon Financial Group. Chaney utilized her position as a loan officer as well as her contacts within the lending industry to obtain mortgage loans by fraud. During the scheme Chaney also acted as a borrower and a seller in a residential transaction. Chaney also engaged in "flip transactions" in which she completed paperwork as if she were purchasing the residential property while simultaneously obtaining financing in the name of a straw borrower to purchase the property. Chaney established and used the assumed name entity Panacea Properties in the execution of the scheme. She also established bank accounts under the name of Panacea Properties. Additionally, several bank accounts were utilized by Chaney to move proceeds of the fraudulent loan activity including an account she established in the name of Panacea Properties.
>
> . . .
>
> 72. The offense involved the coordination of several persons working in various capacities (i.e. loan officers, mortgage brokers, recruiters, and real estate agents) to further the criminal objectives. Din Regina Chaney worked in the lending industry as a loan officer and loan processor for mortgage brokers including Stephens Development Inc. and Gordon Financial Group. Chaney established and used an assumed name entity and bank account for the purpose of executing the mortgage fraud scheme (Panacea Properties). Chaney also participated in the scheme as a

purchaser and seller. In addition, Chaney engaged in simultaneous loan transactions in which she purchased the property from the seller at one price while simultaneously selling the property to a straw borrower at an inflated price. These transactions were closed simultaneously so that the loan funds from the straw purchase could be used to close the transaction between Chaney and the seller as well. The property transactions were structured so that the fraudulently obtained loan proceeds could be extracted for the benefit of the conspirators and ultimately deposited into one or more of the assumed name bank accounts. These fraudulently obtained funds were used, in part, to fund future fraudulent property transactions. The manner in which these funds were handled concealed the true source and nature of the funds from the lender and it was made to appear the funds were funds the borrower had on hand. By way of this execution and concealment of the fraudulent conduct, the offense is considered complex and intricate in nature. And warrants an enhancement for sophisticated means. Chaney was convicted of mail, wire and bank fraud (conspiracy) which has a 30-year statutory maximum penalty and, money laundering (promotion and concealment). As indicated in the chart above, Chaney is held accountable for a total loss of $4,551,917.65 (See attached Chart I for specific properties).

Chaney is considered an average participant in the scheme which defrauded more than 10 victim lenders and involved at least five criminal participants. As a loan officer, Chaney abused her position of trust with the banks, as the false information and misrepresentations Chaney made were material to the lenders decision to whether to fund the residential loans and under what conditions. There is no evidence that the defendant derived more than $1,000,000 in gross receipts from the victim lenders.

(PSR, ¶¶11, 72).

The PSR calculated Chaney's total offense level at 30, which included a two-level reduction for acceptance of responsibility and an anticipated motion by the government for an additional point off for a timely plea, consistent with the plea agreement. A total offense level of 30 and a criminal history category of I established an advisory guideline range of 97 to 121 months.

At the sentencing hearing on July 29, 2014, the parties had no objections to the PSR and the court adopted it. The government moved for a downward departure under U.S.S.G §5K and recommended a 60-month sentence. (*Id.*, p.5) . Defense counsel argued for probation. The court heard allocution and argument, then summarized its ruling:

> Looking at both Ms. Chaney's character and her conduct during and after she pleaded guilty, looking at the nature and extent of her criminal conduct to which she pleaded guilty, looking at all of the factors that 3553(a) permits me to consider, it is the court's judgment that an appropriate sentence for Miss Chaney is 36 months. That is far lower than the government asked me for. It is far, far lower than where Ms. Chaney was simply on the basis of guideline calculations. In the court's judgment, it is enough time, in relation to what others in this conspiracy, received, to accurately respond to and reflect Ms. Chaney's individual culpability relative to others involved in the fraud, to the extent and size of the losses, the scope of the losses that she caused, her conduct, and at the same time recognizes the value of her assistance and the admirable way in which she has conducted herself since all of this came to light, and it is this court's judgment–that is, 36 months as to each of Counts One and Two to be served concurrently.

(*Id.*, p. 10-14).

Chaney's 2255 motion alleges the following four claims:

"Ground One: Ineffective assistance of counsel. Defense counsel failed to file an appeal when the defendant requested that several issues about her case be reviewed."

"Ground Two: Ineffective assistance of counsel. Defense counsel failed to dispute and challenge the "actual loss" amount of restitution that is contributed to the defendant."

"Ground Three: Violation of constitutional rights. Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea."

"Ground Four: Ineffective assistance of counsel. Defense counsel failed to explain the appeal process to the defendant."

(Docket Entry No. 491, pp. 4, 5, 7, 8).

The court ordered defense counsel James Alston to file an affidavit addressing the allegations that he failed to "explain the appeal process to the defendant" and "failed to file an appeal when the defendant requested that several issues about her case be reviewed." Alston has filed an affidavit and several notes from his case file. (Docket Entry No. 506).

### III. The Motion to Dismiss

#### A. The Issues Related to Counsel's Alleged Failure to Consult and File an Appeal

In *Roe v. Flores-Ortega*, 528 U.S. 470, 480, (2000) the Supreme Court held that the failure to file a requested notice of appeal is ineffective assistance of counsel without regard to whether the appeal would have merit. *Flores-Ortega*, 528 U.S. at 483-86; *see also United States v. Tapp*, 491 F.3d 263 (5th Cir. 2007). Counsel has a constitutionally imposed duty to consult with defendant about appeal when there is reason to think either that: (1) a rational defendant would want to appeal; or (2) this defendant reasonably demonstrated to counsel that he was interested in appealing. *Id.* at 480. And, [a]lthough not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.*

If Chaney can demonstrate that she directed counsel to file an appeal on her behalf, she would be entitled to an out-of-time appeal. *Flores-Ortega*, 528 U.S. at 477, 120 S. Ct. at 1035. This rule applies even when, as here, the defendant has waived her right to direct appeal and collateral review. "[I]f the Movant is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the Movant will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver." *Tapp*, 491 F.3d at 266.

Chaney has made only conclusory allegations in her § 2255 motion. She alleges that "[d]efense counsel failed to file an appeal when the defendant requested that several issues about her case be reviewed," and [d]efense counsel failed to explain the appeal process to the defendant."

(Docket Entry No. 491 pp. 4, 8). Counsel's affidavit states the following:

> On July 29, 2014, Chaney was sentenced. It is my belief that Chaney and I won at sentencing. The PSR reflected a recommended sentencing range of 97 to 121 months. The government recommended a downward departure to 60 months. Chaney was sentenced to 36 months. On July 29, 2014 at 3:00 p.m., Chaney sent an email to me which stated: "Hi, James, Sorry, I didn't get a chance to talk to you after sentencing today. I wanted to say thank you for all your help through this. You were very diligent and knowledgeable and I don't think I could have hired a better attorney. Please let me know if there is anything else I need to do between now and October." This email is attached as *Exhibit F*.
>
> At sentencing I asked Judge Rosenthal to give Chaney a delayed surrender date, so that Chaney would have time to start her children in school and make arrangements for her youngest children. Chaney and I had several email communications between the sentencing date and her surrender date and Chaney never asked me to file an appeal on her behalf. A copy of these emails is attached as *Exhibit G*.

(Docket Entry No. 506, p. 2).

Chaney has failed to adequately allege, much less show by a preponderance of the evidence, that she asked her lawyer to file an appeal after the sentencing on July 29, 2014. Counsel's affidavit and the communications from Chaney it describes are consistent with the sentencing outcome. Notwithstanding the advisory Guideline range of 97 to 121 months, and the government's recommendation of a downward departure to 60 months based on Chaney's substantial assistance under U.S.S.G. 5K1.1, the court sentenced Chaney to 36 months. Chaney's conclusory allegation that she "requested that several issues about her case be reviewed" fails to show that she reasonably communicated to counsel that she was interested in appealing from such a favorable result. Chaney has not shown, as required by *Tapp*, that "there is a reasonable probability that, but for counsel's failure, [s]he would have timely appealed" after her sentencing hearing on July 29, 2014. An evidentiary hearing is not required to conclude that Chaney has not shown a basis to succeed on these claims.

### B. The Issues Related to Chaney's Allegation that "Counsel Failed to Dispute and Challenge the "Actual Loss" Amount of Restitution.

Chaney's conclusory allegation that counsel failed to dispute the actual loss and restitution amount fails to show that he provided deficient or prejudicial representation. Counsel's affidavit states as follows:

> On March 19, 2014, Chaney and I met and discussed the PSR and addendum. We discussed specific properties and loss amounts. We also went over my calculations of the possible 5K departure amount of her sentence. My notes from this meeting are attached as *Exhibit D*.
>
> On April 10, 2014, Chaney and I spoke by telephone. We discussed the loss calculations and the amount of loss Chaney may be held responsible for if we happened to win any objections to the loss amount. Chaney and I both agreed that we should not file any objections to the loss amount. Chaney and I both thought and agreed that she had a better chance of getting a lower sentence recommendation from the prosecutor and ultimately from Judge Rosenthal if we did not file objections to the loss amount. Additionally, the projected objections to the loss amount, if sustained would not likely decrease Chaney's loss amount below $2.5 million. My notes from this telephone conversation are included as *Exhibit E*.

(Docket Entry No. 506). Exhibits D and E are counsel's detailed, dated, handwritten, contemporaneous notes. They corroborate the affidavit. The final note in Exhibit E states: "-Spoke to client & went over possible objections & client agreed that we should not file objections."

Chaney's one-sentence allegation includes no details on these issues and no support. "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989). A preponderance of the record evidence shows that Chaney's allegation lacks merit.

### C. The Issues Raised By Chaney's Claim That Her Guilty Plea "Was Unlawfully Induced Or Not Made Voluntarily Or With Understanding of the Nature of the Charge and the Consequences of the Plea.

Chaney voluntarily waived the right to file an appeal or postconviction challenge to her conviction or sentence. An informed and voluntary waiver of the right to file a 28 U.S.C. § 2255

motion will be enforced. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Chaney's sworn statements preclude the relief she seeks. Chaney knew the potential punishment she faced. Her plea was knowing and voluntary, and no one forced or coerced her to plead guilty or to waive the right to appeal and file a collateral challenge.

Chaney's sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). The Fifth Circuit gives "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).

The record supports the conclusions that:

(1) the plea agreement and waiver were knowing and voluntary;

(2) the waiver provision in the plea agreement is enforceable; and,

(3) the waiver and the record preclude Chaney from asserting the grounds she raises in her § 2255 motion as a basis for the relief she seeks.

## IV. Conclusion

The § 2255 motion is dismissed with prejudice. A certificate of appealability will not issue because Chaney has not shown a substantial basis to find the denial of a constitutional right.

SIGNED on September 17, 2015, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge